Rod **WALLACE**, Plaintiff-Appellant,

v.

John Wynne **HERRON**, John N. Gulick, Jr., **Law Offices of John Wynne Herron, A Professional Corporation,** and Daryl J. McKinstry, Defendants-Appellees.

No. 85–1086.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1985.

Decided Dec. 5, 1985.

Robert Clemens, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for plaintiff-appellant.

Friedrich A.P. Siekert, Kightlinger, Young, Gray & DeTrude, Indianapolis, Ind., for defendants-appellees.

Before BAUER and HARLINGTON WOOD, Jr., Circuit Judges, and GRANT, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Rod Wallace, the plaintiff-appellant, appeals the district court's decision to dismiss his suit against the defendants-appellees for lack of personal jurisdiction. The plaintiff, an Indiana resident, sued the defendants, three California attorneys and a California professional corporation, in Indiana for malicious prosecution. Wallace's malicious-prosecution claim is based upon a prior lawsuit in California; in the prior suit the defendants represented a couple, Donna and Willis Seely, who sued a number of parties including Wallace. The district court concluded that it had no personal

jurisdiction over the defendants and dismissed the case. We affirm.

## I.

Rod Wallace, the plaintiff, is an Indiana resident who since the late 1960's has been an independent contractor for several companies dealing in log-home products. Donna and Willis Seely were residents of Indiana from 1974 to 1976, and during that time the Seelys discussed with Wallace their interest in obtaining a log-home franchise.

On April 26, 1975, the Seely's signed a franchise dealership agreement with Real Log Homes, Inc. ("Real"). The agreement gave the Seelys a territory covering several counties in northern California. Wallace was not a party to this agreement and played no role in the negotiations between Real and the Seelys. At no time was Wallace an agent or officer of Real.

In 1976 the Seelys moved to their territory in California to begin marketing log homes. Unfortunately all did not go well and the difficulties the Seelys encountered with Real led them to seek legal aid from the Law Offices of John Wynne Herron ("Herron Law Offices"), a professional corporation. Attorneys John N. Gulick, Jr. and John Wynne Herron, acting on behalf of the Seelys, filed a lawsuit in California state court on February 16, 1978. On March 1, 1978, an amended complaint was filed adding Wallace as a defendant. Eventually the Seelys terminated their attorney-client relationship with Herron Law Offices, and Herron withdrew as counsel of record on May 25, 1979. Attorney Daryl McKinstry, who had entered his appearance on behalf of the Seelys in January, 1979, assumed supervision of the case.

On April 23, 1983, the Seelys dismissed the case against Wallace. On March 27, 1984, Wallace brought this present action in Indiana state court for malicious prosecution, and the defendants removed the

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

case to the federal district court.[1] The defendants then filed motions to dismiss on the basis that the Indiana district court lacked personal jurisdiction over them. The district court concluded that it lacked personal jurisdiction over all the defendants and granted the defendants' motions, ordering the plaintiff's complaint dismissed on January 9, 1985.

## II.

The only issue before this court is whether the district court had *in personam* jurisdiction over defendants Herron, Gulick, McKinstry, and Herron Law Offices. We look first to Indiana's "long-arm" statute, Ind.Code Ann., Title 34, Trial Rule 4.4 (West 1985). This rule extends personal jurisdiction of courts sitting in Indiana, including federal courts, to the limits permitted under the due process clause of the Fourteenth Amendment. *See First National Bank of Louisville v. Bezema,* 569 F.Supp. 818, 819 (S.D.Ind.1983); *Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306, 308 (S.D.Ind.1978); *see also Nu-Way Systems of Indianapolis, Inc. v. Belmont Marketing, Inc.,* 635 F.2d 617, 619 (7th Cir.1980). Our sole inquiry, therefore, is whether the district court could, consistent with due process, assert *in personam* jurisdiction over the defendants.

The Supreme Court first held that the due process clause of the Fourteenth Amendment limits the power of a State to assert *in personam* jurisdiction over a nonresident defendant in *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877). Generally, due process requirements demand that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,*

326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

A court may obtain *in personam* jurisdiction over a defendant based upon either the defendant's general contacts with the forum or the defendant's specific contacts. If a defendant has sufficient "continuous and systematic general ... contacts" with the State, *see, e.g., Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the State may exercise *in personam* jurisdiction over the defendant for a "cause of action [that] does not arise out of or relate to the [defendant's] activities in the forum State." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). The district court found, and the plaintiff does not contest, that the defendants' contacts with Indiana were insufficient to support general *in personam* jurisdiction.

The plaintiff contends, rather, that the Indiana courts may exercise specific *in personam* jurisdiction over the defendants because this controversy "is related to or 'arises out of' [the defendants'] contacts with the forum." *See Helicopteros Nacionales,* 104 S.Ct. at 1872 (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). We therefore must examine the relationship among the defendants, the forum state of Indiana, and the litigation, *see Shaffer,* 433 U.S. at 204, 97 S.Ct. at 2579, to see whether the defendants have sufficient contacts with the forum such that the maintenance of personal jurisdiction over the defendants comports with traditional notions of fair play and substantial justice. *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. The defendants' conduct and connection with Indiana must be such that they should rea-

1. The Indiana state court, before removal to the federal court, had denied the defendant Donna Seely's motion to dismiss for want of personal jurisdiction. Defendant Donna Seely filed the motion both on her own behalf and as administratrix of her late husband Willis Seely's estate. After the Indiana trial court ruled on Seely's motion, the plaintiff added defendants Gulick, Herron, McKinstry, and Herron Law Offices,

and the new defendants removed the case to federal court. Following removal, Seely filed a motion to reconsider her personal jurisdiction claim. Before the federal trial court could consider Seely's new motion, Wallace and Seely stipulated to a dismissal without prejudice of Wallace's claim against the Seelys. This appeal does not involve any issues with respect to the Seelys.

sonably anticipate being subject to the jurisdiction of an Indiana court. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 580, 567, 62 L.Ed.2d 490 (1980).

■ We agree with the district court's determination that defendants Gulick, Herron, McKinstry, and Herron Law Offices lacked the necessary minimum contacts with Indiana. Only Gulick had any actual contact with Indiana, having come to Indiana on one occasion to take depositions. Gulick, who was at that time and still is a resident of California, has never conducted any other business in Indiana and has never been licensed to practice law in Indiana. The present controversy does not arise out of Gulick's sole contact with Indiana, and it would offend traditional notions of fair play and substantial justice for an Indiana court to exercise *in personam* jurisdiction over him in this case.

Defendants Herron, McKinstry, and Herron Law Offices have even less contact with Indiana. Neither Herron nor McKinstry has ever set foot in Indiana, conducted business in Indiana, or been licensed to practice law in Indiana. Herron Law Offices, a California professional corporation, has never been licensed to do business in Indiana. As the district court pointed out, the Supreme Court held in *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159, that the due process clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations."

Plaintiff argues that the defendants' minimum contacts with Indiana are established because the defendants served interrogatories, requested the production of documents, and caused the plaintiff to respond to five complaints in Indiana where the plaintiff resides. The fact of the matter, however, is that the defendants filed these motions on behalf of their clients in a California court pursuant to a California lawsuit, and it would be unreasonable to require the defendants to appear in Indiana to defend this suit on the basis of such attenuated contacts.

On appeal, the plaintiff argues that the recent Supreme Court decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), is analogous to his case. In *Calder,* entertainer Shirley Jones, a California resident, sued two employees of the National Enquirer. The defendants, who wrote and edited an allegedly libelous article, were both Florida residents. The court held that California was the focal point both of the article and of the harm suffered, and thus the California court could exercise jurisdiction over the defendants because of the California "effects" of the defendants' Florida conduct. *Id.* 104 S.Ct. at 1487. The court concluded that because the defendants allegedly committed an intentional tort, knowing it would have a potentially devastating impact upon the plaintiff, and knowing that the plaintiff would be primarily injured in the state in which she lived and worked and in which the magazine had its largest circulation, the defendants "must 'reasonably anticipate being haled in court there' to answer for the truth of the statements made in their article." *Id.*

The plaintiff's reliance on *Calder* is misplaced. We do not believe that the Supreme Court, in *Calder,* was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff. As the Supreme Court explained in *Burger King Corp. v. Rudzewicz,* — U.S. —, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (decided after *Calder*), "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* 105 S.Ct. at 2183. Due process requires that it be foreseeable "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

If we were to accept the plaintiff's argument, it would significantly undercut our traditional due-process protection for out-of-state defendants. If, for example, an Indiana plaintiff sued a California defendant in an Indiana court alleging an intentional tort, the California defendant would be required to come to Indiana and defend the suit to protect himself, no matter how groundless or frivolous the suit might be. If the California defendant did not come to Indiana, the Indiana plaintiff could obtain a default judgment and presumably the defendant could not collaterally attack the judgment and relitigate the merits because the plaintiff's allegation of an intentional tort would have settled the question of the Indiana court's jurisdiction over the California defendant.

The Supreme Court in *Calder* did not make the type of dramatic change in the due-process analysis of *in personam* jurisdiction advocated by the plaintiff. Rather, the so-called "effects" test is merely another way of assessing the defendant's relevant contacts with the forum State. The defendant must still "purposefully avail [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The forum State cannot hale the defendant into court "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." 105 S.Ct. at 2183. Jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 2183–84 (emphasis in original).

The Supreme Court did not intend the *Calder* "effects" test to apply only to libel cases. However, the "effects" of the intentional tort of libel in the forum state (*i.e.*, the plaintiff's residence) are perhaps more pronounced than the "effects" of most other intentional torts. Nevertheless, the key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum. Whether these effects, either alone or in combination with other contacts, are sufficient to support *in personam* jurisdiction will turn upon the particular facts of each case.

The defendants' contacts with Indiana in this case are significantly more attenuated than the *Calder* defendants' contacts with California. In *Calder*, the suit grew out of an article about the California activities of a California resident whose career was centered in California. The defendants relied primarily on California sources in writing the article. 104 S.Ct. at 1486–87. California was the focal point both of the story and any harm suffered. The harm was uniquely related to California because the emotional distress and injury to professional reputation suffered by the plaintiff were primarily a result of the publication of the story to other California residents. *Id.* *Calder* on its facts is sharply distinguishable from this malicious prosecution case, where the defendants' only arguable contacts with Indiana were the legal papers which were served on Wallace in Indiana. The defendants filed these papers on behalf of their California clients in a California court pursuant to a California lawsuit. Unlike the *Calder* defendants, Gulick, Herron, McKinstry, and Herron Law Offices took no action that created the necessary connection with Indiana for them to reasonably anticipate being haled into court there. Their contacts with Indiana are so attenuated that it would violate the due process clause of the Fourteenth Amendment for an Indiana court to exercise *in personam* jurisdiction over them.

### III.

The Indiana district court correctly concluded that the due process clause of the Fourteenth Amendment to the United States Constitution prevented the court from exercising *in personam* jurisdiction over these California defendants. The court's decision to dismiss the plaintiff Wallace's cause of action against defendants Gulick, Herron, McKinstry, and Her-

ron Law Offices for lack of *in personam* jurisdiction is AFFIRMED.