Dorothy A. WILSON and Louis P. Wilson, Plaintiffs–Appellees,

v.

HUMPHREYS (CAYMAN) LIMITED, a corporation, and Holiday Inns, Inc., a corporation, Defendants–Appellants.

Nos. 88–2495, 88–2496.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1989.

Decided Oct. 24, 1990.

Rehearing Denied Nov. 21, 1990.

Robert L. Gibson, Alfred H. Kreckman, Jr., Massey, Anderson & Gibson, Paris, Ill., Phillip A. Terry, McHale, Cook & Welch, Indianapolis, Ind., for plaintiffs-appellees.

James A. McDermott, Jan M. Carroll, Barnes & Thornburg, Indianapolis, Ind., Theodore J. Nowacki, Bose, McKinney & Evans, Indianapolis, Ind., for defendants-appellants.

Before BAUER, Chief Judge, and RIPPLE, Circuit Judge, and WILL, Senior District Judge.*

RIPPLE, Circuit Judge.

Dorothy and Louis Wilson initiated this diversity action in 1986. The Wilsons as-

---

* The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

serted that the two defendants involved in this appeal, together with a third defendant, were liable to them for damages in connection with a serious injury suffered by Mrs. Wilson while staying as a guest in appellant Humphreys' hotel.[1] Humphreys and Holiday Inns moved to dismiss the complaint due to lack of subject matter and personal jurisdiction, and asserted that the forum selected by the plaintiffs violated the doctrine of *forum non conveniens.* The district court denied these motions. Upon application by the appellants, the district court certified the questions of jurisdiction and *forum non conveniens* to this court on May 25, 1988 (for Humphreys), and July 7, 1988 (for Holiday Inns). This court accepted the appeal on July 13, 1988. We now affirm the judgment of the district court in part and remand for further consideration.

## I

## BACKGROUND

Humphreys (Cayman) Limited is incorporated under the laws of the Cayman Islands. Humphreys is a licensee of appellant Holiday Inns, Inc. and operates a hotel in the Cayman Islands under authority of that license. Humphreys maintains a corporate office in Memphis, Tennessee and has operated a reservations office in Miami, Florida. Holiday Inns, Inc. is a Tennessee corporation and is registered to do business in Indiana. The record does not reveal the nature or extent of its activities within the state.

Since 1976, Humphreys has participated in a continuing commercial relationship with American Trans Air (American) to provide accommodations for tours run by American to the Cayman Islands. As part of this relationship, Humphreys sent officers to Indianapolis on at least one occasion to meet with representatives of American. During a trip to Indiana in the summer of 1981, Humphreys' representatives negotiat-

ed a long-term contract with American by which a certain number of rooms at Humphreys' hotel would be guaranteed at a reduced rate for American-run tours, with American tour leaders receiving free accommodations. American frequently has listed trips to the Cayman Islands in its regular advertising brochures and has included specific references to Humphreys' hotel. In addition, Humphreys advertises extensively in national magazines directed both at travel agents and potential travellers. Humphreys printed rate cards and brochures that it sent for further distribution to American in Indiana and to various travel agents around the country.

Dorothy and Louis Wilson participated in a tour organized by American that left Indianapolis International Airport on October 28, 1984. The group stayed at Humphreys' hotel in the Cayman Islands. According to Mrs. Wilson's affidavit, arrangements for the trip were made as a result of advertisements for the tour that appeared in American's travel bulletin. Arrangements were made with American's tour subsidiary, Ambassadair, and payment was made to Ambassadair in Indianapolis, Indiana.

On October 30, 1984, Mrs. Wilson was assaulted by an intruder in her hotel room. The intruder attempted to rob and rape Mrs. Wilson, and she suffered serious injuries. She spent a week in a hospital on the Cayman Islands and then returned to Indianapolis to be treated at Methodist Hospital.

The complaint contains thirteen counts against the two appellants in this case. The counts charge the appellants with negligence, breach of express and implied warranties, breach of contract, and negligent infliction of emotional distress. The appellants moved to dismiss the complaint on the grounds of lack of subject matter or personal jurisdiction, and *forum non conveniens.* The district court denied these motions, but subsequently certified them for

---

**1.** One of the original defendants, American Trans Air, Inc., moved for summary judgment, which was granted by the district court on April 6, 1988. The district court entered final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and that portion of the case was appealed immediately. This court affirmed the district court's judgment regarding the air carrier in *Wilson v. American Trans Air, Inc.,* 874 F.2d 386 (7th Cir.1989).

interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We accepted the appeal and now consider each issue in turn.

## II

## ANALYSIS

### A. Subject Matter Jurisdiction

■ Diversity jurisdiction in this suit is based on 28 U.S.C. § 1332(a)(3), which provides for jurisdiction when the suit is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." Humphreys argues that the district court cannot exercise subject matter jurisdiction over it because it is a company incorporated in the Cayman Islands, and the Cayman Islands is not a "foreign state." Humphreys reaches this conclusion by noting that the Cayman Islands is a dependency of Great Britain and that the United States does not regard the Cayman Islands as an independent sovereign. *See* The World Factbook 1989 at 56.

The power to exercise jurisdiction over a foreign citizen under 28 U.S.C. § 1332 has been referred to as "alienage jurisdiction." *Sadat v. Mertes*, 615 F.2d 1176, 1182 (7th Cir.1980). This type of jurisdiction "was intended to provide the federal courts with a form of protective jurisdiction over matters implicating international relations where the national interest was paramount." *Id.*

> "The dominant considerations which prompted the provision for such jurisdiction appear to have been:
>
> (1) Failure on the part of individual states to give protection to foreigners under treaties; ... [and]
>
> (2) Apprehension of entanglements with other sovereigns that might ensue from failure to treat the legal controversies of aliens on a national level."

*Id.* (quoting *Blair Holdings Corp. v. Rubinstein*, 133 F.Supp. 496, 500 (S.D.N.Y. 1955)).

Our inquiry therefore must be whether the policies supporting alienage jurisdiction permit a United States District Court to assume jurisdiction over a citizen of the Cayman Islands.[2] The Cayman Islands is a British Dependent Territory.[3] A citizen of a British Dependent Territory is a "citizen of the United Kingdom and Colonies." British Nationality Act 1981 § 51(3)(a)(ii). According to an affidavit of a Cayman Islands attorney submitted by Humphreys, the court system in the Cayman Islands is patterned after that of Great Britain. In addition, "[t]he Common Law of England ... is recognised and applied by the Courts in all cases where there has not been a specific local enactment." Humphreys' App. at 66. The Cayman Islands is administered by a governor who is appointed by the British monarch. The United Kingdom represents Caymanian diplomatic interests and is responsible for its military defense. The World Factbook 1989 at 56.

Several federal courts have determined, although generally without discussion, that subject matter jurisdiction existed in suits between citizens of the United States and Cayman Island corporations. *See Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 399–400 (7th Cir.1986); *Philan Ins. Ltd. v. Frank B. Hall & Co., Inc.*, 712 F.Supp. 339, 345 (S.D.N.Y.1989); *Rolls Royce (Canada) Ltd. v. Cayman Airways, Ltd.*, 617 F.Supp. 17, 18 (S.D.Fla.1985). In addition, the Second Circuit concluded that alienage jurisdiction existed over a company incorporated in Bermuda, also a British Dependent Territory. *Netherlands Shipmortgage Corp. v. Madias*, 717 F.2d 731, 735 (2d Cir.1983); *see also* British Nationality Act 1981, 31 Halsbury's Statutes 172 (4th ed. 1987) (Bermuda identified as a British Dependent Territory).

Humphreys relies on one unpublished district court decision for support of its assertion that alienage jurisdiction does not apply to this case. *St. Germain v. West Bay Leasing, Ltd.*, CV–81–3945, order

---

2. Corporations are considered citizens of the country in which they are incorporated. *National Steamship Co. v. Tugman*, 106 U.S. (16 Otto) 118, 120–21, 27 L.Ed. 87 (1882); *Panalpina*

*Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir.1985).

3. British Nationality Act 1981, 31 Halsbury's Statutes 172 (4th ed.1987).

(E.D.N.Y.1982). That court in fact did conclude that subject matter jurisdiction was lacking when one of the parties was a Cayman Islands corporation. The court relied in part on an earlier decision denying diversity jurisdiction over a business incorporated in Hong Kong, a British colony. *Windert Watch Co. v. Remex Elecs. Ltd.*, 468 F.Supp. 1242 (S.D.N.Y.1979). However, the force of the *Windert* decision has been eroded by a more recent case from the same court. In *Tetra Finance (HK) Ltd. v. Shaheen*, 584 F.Supp. 847 (S.D.N.Y. 1984), the court noted that corporations should not be denied access to American courts simply because of the status of the country in which they are incorporated. "It would seem hypertechnical to preclude Hong Kong corporations from asserting claims in our courts simply because Hong Kong has not been formally recognized by the United States as a foreign sovereign in its own right." *Id.* at 848.[4]

We agree with the district court that subject matter jurisdiction under section 1332 is present. We see no reason to depart from the weight of authority. Certainly, the exercise of American judicial authority over the citizens of a British Dependent Territory implicates this country's relationship with the United Kingdom—precisely the raison d'etre for applying alienage jurisdiction. Not applying alienage jurisdiction in this case would allow "form rather than substance" to govern. *Murarka v. Bachrack Bros.*, 215 F.2d 547, 552 (2d Cir.1954) (Harlan, J.).[5]

### B. *Personal Jurisdiction*

■ In a diversity case, a federal district court has personal jurisdiction over a nonresident defendant "only if a court of the state in which it sits would have such jurisdiction." *Turnock v. Cope*, 816 F.2d 332,

334 (7th Cir.1987). Therefore, review of decisions regarding jurisdiction of a federal court in a diversity suit requires a two-part inquiry: (1) whether the state statute allows jurisdiction, and (2) whether the assertion of jurisdiction complies with constitutional due process standards. *See Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 279 (7th Cir.1990); *John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 401–02 (7th Cir.1987) (Illinois long-arm statute); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1069 at 347 (1987). In this case, these twin inquiries collapse into one, because, as this court has noted, Indiana's long-arm statute extends personal jurisdiction to the limit allowed under the due process clause of the fourteenth amendment. *Wallace v. Herron*, 778 F.2d 391, 393 (7th Cir.1985) (and cases cited therein), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). Accordingly, we shall focus on whether assertion of jurisdiction in this case violates due process.

Due process requires that the defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *FMC Corp. v. Varonos*, 892 F.2d 1308, 1313 (7th Cir.1990). The minimum contacts must be established by the purposeful acts of the defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Examples of acts that, depending on the circumstances, might support a determination of jurisdiction include "designing the product for the

---

**4.** *Windert* also was rejected by Judge Kocoras in *Creative Distributors, Ltd. v. Sari Niketan, Inc.*, Mem. op., 1989 WL 105210, 1989 U.S. Dist. LEXIS 10436 at *4 (N.D. Ill.1989) (finding the reasoning of *Tetra Finance* persuasive), and Judge Luongo in *Timco Eng'g, Inc. v. Rex & Co.*, 603 F.Supp. 925, 930 n. 8 (E.D.Pa.1985) (same).

**5.** In *Murarka v. Backrack Bros., Inc.*, 215 F.2d 547 (2d Cir.1954), the plaintiff was a citizen of

India who filed his suit while India was still a British colony. The defendant claimed that, because India was not a sovereign nation when the complaint was filed, the court did not have alienage jurisdiction. Then–Judge Harlan determined that the district court did have jurisdiction, because the United States had granted *de facto* recognition of India by accepting an ambassador from that country. *Id.* at 552.

market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

There are two types of jurisdiction that can be exercised over an out-of-state defendant—specific and general. When the defendant's activities in the state with respect to the transaction underlying the litigation serve as the basis for jurisdiction, the assertion of jurisdiction is said to be "specific." *See Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984); *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 666 n. 3 (7th Cir.1986) (discussing difference between general and specific jurisdiction), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); *Wallace,* 778 F.2d at 393 (same). By contrast, when the defendant's overall activity in the state, not simply its actions with respect to the underlying transaction, are the basis, the jurisdiction is said to be "general." *See Helicopteros Nacionales de Colombia,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9.

### 1. specific jurisdiction over Humphreys

■ Considering Humphreys first, we shall examine whether the contacts it had with the state satisfy the assertion of specific jurisdiction.[6] Jurisdiction based on such contacts comports with due process only if Humphreys reasonably should have anticipated being haled into court in Indiana. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *FMC Corp. v. Varonos,* 892 F.2d 1308, 1313 (7th Cir.1990); *Wallace,* 778 F.2d at 393–94. Humphreys must purposefully have availed itself of the " 'privilege of conducting activities' " in Indiana.

*Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)); *see also Giotis,* 800 F.2d at 666; *Wallace,* 778 F.2d at 395.

"Specific jurisdiction turns on a particularized assessment of the 'relationship among the defendant, the forum, and the litigation.' " *Saylor v. Dyniewski,* 836 F.2d 341, 344 (7th Cir.1988) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). The conduct engaged in by Humphreys in Indiana is certainly sufficient to satisfy specific jurisdiction. Humphreys advertised in the state of Indiana, entered into a long-term arrangement with an Indiana corporation to provide a guaranteed number of rooms to be used in connection with tour packages that departed from Indiana, and sent representatives to Indiana to negotiate the contract. In short, Humphreys established a continuing commercial relationship with an Indiana tour company with the expectation that its service (providing accommodation) would be purchased by residents of Indiana (and other states). These contacts convince us that the district court correctly determined that Humphreys is subject to personal jurisdiction in Indiana. Humphreys, by its own business conduct, had purposefully availed itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). It should have "reasonably anticipate[d] being haled into court there." *World–Wide Volkswagen v. Woodson,* 444 U.S. at 297, 100 S.Ct. at 567; *see Shute v. Carnival Cruise Lines,* 897 F.2d 377, 380, 386 (9th Cir.1990) (in plaintiff's personal injury suit, specific jurisdiction over corporation was found where corporation advertised in forum, sent brochures to forum, solicited business in forum, and sold tickets on a commission basis through travel agents in forum) (as amended and refiled); *Rainbow Travel Serv., Inc.*

---

**6.** It is not argued that Humphreys' business in Indiana constitutes "the kind of continuous and systematic general business contacts," *Helicopte-*

*ros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984), necessary for general jurisdiction.

*v. Hilton Hotels Corp.*, 896 F.2d 1233, 1238 (10th Cir.1990) (contacts sufficient to meet due process requirements when hotel solicited business in forum state, carried out negotiations there, and sent contracts there for execution); *Neiman v. Rudolf Wolff & Co.*, 619 F.2d 1189, 1193 (7th Cir.) (personal jurisdiction established where employee of defendant [an English company] came to forum for a lunch meeting, and meeting constituted bulk of negotiations that led to formation of contract; "A defendant's participation in the state in substantial preliminary negotiations leading to the contract in issue has been held a sufficient basis for long-arm jurisdiction."), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980).[7]

### 2. general jurisdiction over Holiday Inns

■ On this record, personal jurisdiction over Holiday Inns must be based, if at all, on general jurisdiction, because the only connection Holiday Inns had with the injury was its franchise arrangement with Humphreys. Jurisdiction based on a party's generally affiliating nexus with the state, as previously noted, does not offend due process when there are "continuous and systematic general business contacts" of the defendant in the state. *Helicopteros Nacionales de Columbia*, 466 U.S. at 416, 104 S.Ct. at 1873. "This is a fairly high standard in practice." *Fields v. Sedgwick Associated Risks Ltd.*, 796 F.2d 299, 301 (9th Cir.1986); *see Shute*, 897 F.2d at 380–81 (collecting cases). The Wilsons argue that the Indiana registration act, Indiana Code 23–1–11–6,[8] is sufficient to support general jurisdiction. Registering to do business is a necessary precursor to engaging in business activities in the forum state. However, it cannot satisfy ... standing alone ... the demands of due process. Such an interpretation of the

Indiana registration statute would render it constitutionally suspect and, accordingly, we decline to give it such a reading. *Cf. NLRB v. Catholic Bishops of Chicago*, 440 U.S. 490, 500, 99 S.Ct. 1313, 1318, 59 L.Ed.2d 533 (1979).

On this record, we cannot determine whether Holiday Inns had a sufficient level of conduct and activity in Indiana to justify the characterization "continuous and systematic." *Helicopteros Nacionales de Colombia*, 466 U.S. at 416, 104 S.Ct. at 1873. Accordingly, we remand this aspect of the case to the district court for a more plenary inquiry into the contacts and conduct of Holiday Inns in Indiana.

### C. *Forum Non Conveniens*

■ We review under an abuse of discretion standard the district court's decision to deny a motion to dismiss for *forum non conveniens*. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *FMC Corp. v. Varonos*, 892 F.2d 1308, 1314 (7th Cir.1990). As the Supreme Court has instructed,

> [W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.

*Piper Aircraft Co.*, 454 U.S. at 257, 102 S.Ct. at 266. Furthermore, the district court is granted "substantial flexibility" in deciding a *forum non conveniens* argument. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988).

"There is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir.1982); *see Piper Aircraft*

---

7. The *Neiman* court also noted that convenience for the parties is a factor that is often considered as part of a due process minimum contacts analysis. In that case, the fact that the defendant was an English company and that litigation in Illinois might have been inconvenient was not dispositive, for "it would also be inconvenient for plaintiff to sue overseas." 619

F.2d at 1195 n. 8. Because of the "purposeful acts" in the forum, the inconvenience did not amount to denial of due process. *Id.*

8. This section was repealed in 1986 and superceded by the foreign corporations chapter of the Indiana Code, sections 23–1–49–1 to –10.

*Co.,* 454 U.S. at 255, 102 S.Ct. at 265; *Koster v. (American) Lumbermens Mutual Casualty,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947); *Gulf Oil v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). "Courts routinely give less weight to a foreign plaintiff's choice of forum. Citizens or residents deserve somewhat more deference than foreign plaintiffs." *Macedo,* 693 F.2d at 688; *see Piper Aircraft,* 454 U.S. at 256, 102 S.Ct. at 266. Nevertheless, the district court must be able to police misuse, such as actions brought in a particular forum to harass a party. There is no rigid test upon which a district court must focus when analyzing a *forum non conveniens* argument; instead, as articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* there are several public and private interest factors that may be considered.[9] Private interests include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

330 U.S. at 508, 67 S.Ct. at 843. Public interests include judicial administration, trying cases in a forum that has a relation to the litigation, and having matters of state law decided by a court sitting in that state. *Id.* at 508–09, 67 S.Ct. at 843.

In this case, the district court relied exclusively on the reasoning found in *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339 (8th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984). We recognize, as did the district court, the substantial similarity between the forum-related factors present in this suit and those present in the *Lehman* suit. As is apparent from the case name, *Lehman* involves the same Cayman Islands hotel as is involved here. Similarly, the injury occurred on the Cayman Islands to a United States resident who responded to a Humphreys' advertisement in the United States. The Eighth Circuit evaluated many of the *Gilbert* factors. The court first determined that the location of witnesses in the Cayman Islands did not militate strongly for applying *forum non conveniens,* because many of the witnesses were Holiday Inns employees (thus enabling Humphreys to obtain their cooperation in travelling to testify), and other modes of obtaining the evidence—such as admissions and depositions—could be used. *Lehman,* 713 F.2d at 343. The court also concluded that Iowa and the United States had an interest in the suit because the injured party was an Iowa resident and had made the travel arrangements in Iowa. *Id.* at 344. The Eighth Circuit placed some weight on the fact that the procedures for litigating in the Cayman Islands would disadvantage the plaintiff. Attorneys there do not accept work for contingent fee arrangements; it is likely that the plaintiff could not receive a jury trial for her injury action; and she would have been required to post a $1,000 bond with the court because she was a foreigner. *Id.* at 345–46. Accordingly, the Eighth Circuit determined that the district court abused its discretion in dismissing the action on the ground of *forum non conveniens. Id.* at 347.

We cannot say that the district court abused its discretion in declining to dismiss the suit. Great weight must be given the Wilsons' choice of forum. The inconvenience for Humphreys of litigating the case in Indiana must be balanced against the disadvantageous procedures available in

---

**9.** The Supreme Court never has ruled whether the criteria governing the *forum non conveniens* decision are governed by federal or state law under the rule of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 248 n. 13, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981). Because the parties appear to agree that federal and Indiana criteria are the same, we need not decide the matter. Humphreys' Br. at 24.

the Cayman Islands for the Wilsons,[10] the interest of Indiana in providing a remedy for an injury stemming from a tour booked in Indiana for a group that left from Indiana, and the hardships that the Wilsons would encounter in litigating a case at such a great distance from their home. For these reasons, we conclude that the district court did not abuse its discretion in denying the *forum non conveniens* motion.

## Conclusion

For the foregoing reasons, we affirm the orders of the district court regarding Humphreys, but remand to the district court for further consideration on whether Holiday Inns has subjected itself to general jurisdiction in Indiana.

AFFIRMED IN PART AND REMANDED.

WILL, Senior District Judge, concurring in part and dissenting in part.

I concur in the remand as to Holiday Inns. I dissent, however, from the assertion of "specific" jurisdiction over Humphreys and from the majority's affirmance that Indiana is a proper forum.

The Wilsons are residents of Illinois. Their trip to the Caymans was a gift from their son. He planned it and paid for it. Neither the son nor the Wilsons had any contacts with Humphreys, in Indiana or anywhere else in the United States. He booked the trip through American, and there is no evidence that he was influenced in any way by anything Humphreys said or did, that he selected Humphreys or even knew that it was to be the hotel. In fact, the record is clear, as the majority recognizes, that "arrangements for the trip were made as a result of advertisements for the tour that appeared in American's travel bulletin. Arrangements were made with American's tour subsidiary, Ambassadair, and payment was made to Ambassadair. . . ." Majority op. at 1241.

### I.  Personal Jurisdiction

Jurisdiction over an unwilling, non-resident defendant conforms to the requirements of due process only if the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A defendant who has "purposefully established 'minimum contacts' in the forum State" has impliedly submitted to jurisdiction in the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). But merely " 'random,' 'fortuitous,' or 'attenuated' " contacts with a forum are not enough. *Id.* at 475, 105 S.Ct. at 2183. Further, any "assertion of personal jurisdiction [must] comport with 'fair play and substantial justice.' " *Id.* at 476, 105 S.Ct. at 2184, quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). And, finally, in the special case of "specific" jurisdiction, a defendant's contacts with the forum serve as a basis for personal jurisdiction only for suits "arising out of or related to" those contacts. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984).

Humphreys here had no purposeful contacts with the plaintiffs or with Indiana related to this suit, which arises from acts and events that took place entirely in the Cayman Islands. Humphreys could not reasonably have anticipated being haled into court in Indiana, and forcing Humphreys to defend this case in an Indiana courtroom is far from fair or substantially just.

Any and all contacts with the Wilsons' son in Indiana related to this lawsuit were American's, not Humphreys', and American admittedly did not act as Humphreys' agent. American had no authority to confirm reservations and bind Humphreys and it did not purport to do so. American had

---

10. We recognize that, to the extent these disadvantages are grounded in differences in the substantive law of the Cayman Islands, they may be given some, but not substantial or conclusive,

weight. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 247, 102 S.Ct. 252, 261, 70 L.Ed.2d 419 (1981); *Macedo v. Boeing Co.,* 693 F.2d 683, 688 (7th Cir.1982).

**1248**

to submit all reservations to Humphreys for confirmation.[1]

I can understand how Humphreys could reasonably have expected to be haled into an Indiana court, state or federal, to resolve a dispute arising from its contract with American Trans Air, which contract was negotiated in Indiana, or if it had sold products in Indiana. But this case arises from a dispute between Humphreys and the Wilsons, not Humphreys and American. Humphreys did not sell products in Indiana, and Humphreys had no contacts whatsoever with the Wilsons in Indiana or anywhere else in the United States.

The majority's suggestion that Indiana courts have jurisdiction here because "Humphreys established a continuing commercial relationship with an Indiana tour company with the expectations that its services would be purchased by residents of Indiana (and other states)," majority op. at 1244, and "Humphreys reasonably should have anticipated being haled into court in Indiana," *id.* at 1244, strikes me as wholly inconsistent with the facts as well as the requirements of due process.

Humphreys undoubtedly serves hundreds or even thousands of U.S. tourist guests each year as the result of reservations made by American and other U.S. tour operators and travel agencies. Every U.S. tour organizer or travel agency has innumerable foreign hotels, bus lines, guide services, etc., with which it maintains continuing commercial arrangements. It would be surprising, however, if Humphreys or any other foreign service provider anticipated that, merely as a result of its contacts with U.S. travel agents and without more, it might wind up defending lawsuits brought by its U.S. guests in U.S. courts.

To hold, as the majority does today, that Indiana courts may properly exercise in personam jurisdiction over Humphreys is to hold that any foreign hotel, restaurant, museum or other facility or service provider, which confirms reservations for U.S. travel agents and tour operators and compensates those travel agents and tour operators for arranging reservations (a frequent and typical practice), is subject to the jurisdiction of U.S. courts and should expect to be haled into them to defend tort suits or any other claims brought by U.S. guests. This, notwithstanding that the hotel or other service provider has had no dealings with the guest in any U.S. forum, that there was no principal/agent relationship between it and the travel agent or tour operator with whom the guest solely dealt, and even though all the acts and events alleged in the guest's complaint occurred in Timbuktu, Bali, Japan, Australia, Majorca, Tahiti or where-have-you, where, in addition, all the witnesses and relevant records are located.

The kind of global long-arm jurisdiction which the majority endorses, in my opinion, both fails the minimum contacts test and is at odds with the fundamental due process requirement that jurisdiction comport with "fair play and substantial justice." I believe that compelling Humphreys to litigate in Indiana is unanticipated, unfair and beyond the bounds of due process. Cf. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

---

**1.** See *Fordyce v. Round Hill Developments, Ltd.,* 585 F.2d 30 (2d Cir.1978) (Jamaican hotel did not subject itself to jurisdiction of New York courts by contracting with a travel agent, where the travel agent was an independent contractor which leased rooms from the hotel at its own risk); *Kopolowitz v. Deepdene Hotel & Tennis Club,* 464 F.Supp. 677 (S.D.N.Y.1979) (Bermuda hotel did not submit to jurisdiction of New York courts by engaging a sales representative to promote the hotel and handle inquiries and requests for reservations, in New York and elsewhere in the United States, where the sales representative did not have the power to confirm reservations). Compare *Gelfand v. Tanner Motors Tours, Ltd.,* 385 F.2d 116 (2d Cir.1967) (involving a nonforum defendant whose agent in New York had power to confirm reservations).

## II. Forum Non Conveniens

In addition to holding that Indiana's long-arm statute reaches Humphreys, the majority also finds, as did the Eighth Circuit, in *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339 (8th Cir.1983), that the fact that the hotel and all the witnesses are located in the Cayman Islands, where all the events giving rise to this case took place, is outweighed by other considerations such as the allegedly limited availability of contingent fee arrangements and jury trials in the Cayman Islands, the necessity of a bond, the plaintiffs' prerogative to choose their forum, and the hardship for the plaintiffs of litigating in the Cayman Islands (where their alleged cause of action arose). I respectfully disagree.

There are a number of serious problems with trying this case in Indiana. First, the site of the alleged tort, the defendant, all the witnesses other than the plaintiffs and all the records are in the Cayman Islands. The inconvenience to Humphreys far outweighs any inconvenience to the Wilsons to try the case where it arose.

Second, Indiana citizens undoubtedly have an interest in a convenient home forum. And, if due process permits, Indiana may have an interest in providing such a forum for its citizens who choose to litigate there. But it is difficult to conceive of what real interest either Indiana or its citizens have in this case. The Wilsons are citizens of *Illinois*. In *Lehman*, by contrast, the plaintiffs were, at least, citizens of the forum state.

Third, while it would undoubtedly be to the Wilsons' advantage to try this case under Indiana law (and before an Indiana jury)—which is, presumably, why they chose to file it there—the differences the parties have identified between Indiana law and the law of the Cayman Islands are not in themselves a justification either for Indiana courts to assert due process long-arm jurisdiction or for finding that the balance of inconvenience in this case favors an Indiana trial. Both the majority and the district court have given too much weight to these differences. "The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247, 102 S.Ct. 252, 261, 70 L.Ed.2d 419 (1981) (availability of strict liability in Pennsylvania but not in Scotland did not, by itself, bar dismissal for *forum non conveniens* ). See also *id.* at 252 n. 19, 102 S.Ct. at 264 n. 19.

I would note, in addition, that although the Wilsons have apparently been assuming that in Indiana, local law would apply, that may or may not be true. Although the majority does not discuss the issue, it is an important conflict of laws question, and possibly a difficult one, whether Cayman Islands or Indiana law should govern at trial. See *Piper Aircraft*, 454 U.S. at 251, 102 S.Ct. at 263 ("The doctrine of *forum non conveniens* ... is designed in part to help courts avoid conducting complex exercises in comparative law."). The answer to that question, which depends on Indiana's choice-of-law rules, may determine not only the applicable law of liability and the right to a jury but also Mr. Wilson's right to sue. If the majority is holding, as it seems to suggest by referring to trial by jury, not only that Indiana courts have jurisdiction but also that Indiana substantive law applies, then I believe the opinion ought not to assume it, but should say so and explain why.

A fourth problem with allowing this case to proceed in Indiana is that it is likewise unclear and troubling to me how an Indiana judgment against Humphreys, *should that be the outcome*, would be enforced—an issue which, again, the majority's opinion overlooks. I would certainly hope that Humphreys, desiring to continue to attract U.S. tourists, would recognize and respond to any judgment that might be entered against it. But asserting jurisdiction over and entering judgments against foreign entities, many of whom have no assets in the United States, is at best a speculative practice.

## III. Conclusion

It is worth noting the probable consequences of the majority's decision. Many

Americans are frequent foreign travelers. If U.S. courts have jurisdiction every time an American tourist has a dispute with a foreign service provider which has an ongoing contact with an American tour organizer or travel agent, we are going to see a lot more lawsuits such as this one, and foreign service providers will likely protect themselves from their increased exposure by charging higher rates and/or insisting on exculpatory provisions in their contracts with Americans.

I recognize that finding no U.S. jurisdiction in cases like this might require American travelers like Mrs. Wilson to return to places where they have had traumatic experiences in order to pursue remedies for alleged wrongs. Those are not considerations, however, that are relevant to jurisdiction, which can only be stretched so far as due process allows and has, I believe, been stretched far too far in this case.

It is undisputed that U.S. tourists traveling voluntarily in foreign countries are subject to the laws and jurisdiction of the courts of those countries. Consistent with that principle, the long-arm jurisdiction of the fifty states cannot be applied globally so as to give U.S. courts specific jurisdiction over foreign defendants in tort cases arising from events that took place entirely on foreign soil and are unrelated to the defendants' contacts with any U.S. forum.

Believing that the bounds of due process have been far exceeded in this case, I would reverse the finding of jurisdiction as to Humphreys. I believe, in addition, that denying Humphreys' motion for a dismissal for *forum non conveniens* constituted an abuse of discretion and would also reverse on that basis, even if Humphreys' contacts with Indiana satisfied due process. I concur, however, with the majority's conclusions as to Holiday Inns.