**Victor GALLERT, Plaintiff,**

v.

**COURTAULDS PACKAGING CO. INC.,
Thatcher Tubes, Defendant.**

**No. IP 97–1567–C M/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 30, 1998.

Raymond J. Hafsten, Indianapolis, IN, for Plaintiff.

James K. Stucko, Jr., Scott, Scriven & Wahoff, LLP, Columbus, OH, for Defendant.

## ORDER

MCKINNEY, District Judge.

This matter is before the Court on a motion filed by defendant Courtaulds Packaging Co. Inc., Thatcher Tubes ("Courtaulds") to dismiss for lack of personal jurisdiction or, in

the alternative, to transfer venue to the Northern District of Illinois. The parties have completed their briefing, and the issues are now ready for decision. For the following reasons, Courtaulds's motion to dismiss is **DENIED,** and its motion to transfer is also **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Victor Gallert ("Gallert") filed a complaint against his former employer Thatcher Tubes, a division of Courtaulds, alleging that his employment was terminated in violation of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 621 et seq. Courtaulds is a West Virginia corporation comprised of four divisions: Thatcher Plastic Tubes ("Thatcher Plastic"), Thatcher Laminate Tubes ("Thatcher Laminate"), Knight Engineering & Plastics ("Knight"), and Betts Tubes. Thatcher Plastic has its headquarters in Woodstock, Illinois, with an office in Washington Courthouse, Ohio. Knight is also located in Woodstock, Illinois, and Thatcher Laminate is based in Florence, Kentucky. Pl's Ex. 3, Def's Ans. to Pl's Interrogs. at 2.

In the absence of an evidentiary hearing, the Court must resolve all factual disputes relating to jurisdictional facts in Gallert's favor. *See Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996); *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987). According to his complaint, Gallert had been employed by Thatcher Plastic as a sales representative for more than thirteen years when he was terminated on June 2, 1997, at the age of fifty-nine. Compl. ¶¶ 1–2. Pl's Resp. to Def's Mot. to Dism. or Transf. ("Response") at 2. He resided in Indiana for more than ten of those years, and "maintained the Thatcher Tubes sales office at his home in Trafalgar, Indiana." Compl. ¶ 4; Response at 2. Indiana had been part of his sales territory for more than five years. Response at 2. Jerry Perez, Vice President of Sales and Marketing at Thatcher Plastic, confirmed that Gallert lived in Indiana while employed by Thatcher Plastic, and that Gal-

lert "had a facsimile machine and telephone in his residence that he used to communicate with Thatcher ...." Perez Aff. ¶ 5. Perez stated that he "made the decision to terminate Mr. Gallert's employment in Illinois" and "advised [him] of his termination when [Gallert] was in Illinois." *Id.* ¶ 6.

During Gallert's employment at Thatcher Plastic, the company was purchased by Courtaulds and became one of its divisions. Pl's Ex. 4, Ans. to Interrogs. at 2. Thatcher Plastic is not incorporated, and it does not have a separate legal identity. *Id.* Courtaulds admits that it files a consolidated federal tax return, none of its divisions file separate returns, and Courtaulds's assets are not immune from collection of an adverse judgment against Thatcher Plastic. Pl's Ex. 4 at 3–4.

Courtaulds states that it does not have a business office in Indiana, nor does it operate any manufacturing plants in this state.[1] According to Courtaulds, sales in Indiana accounted for only about .0055% of Thatcher Plastic's total annual sales. Perez Aff. ¶ 4. However, two other Courtaulds divisions enjoyed more substantial sales in Indiana. Thatcher Laminate sold eighty million dollars of products during the last four years to the Colgate plant in Jeffersonville, Indiana. Pl's Ex. 3 at 3. In addition, Knight sold five million dollars of aerosol overcaps to Indiana businesses during the same period. *Id.*

Courtaulds filed a motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(3) on grounds that this Court lacks personal jurisdiction over Courtaulds and that, consequently, venue in this district is improper. In the alternative, Courtaulds requests that the Court transfer this case to the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1391(c), 1406(a). The Court will discuss each request in turn.

## II. DISCUSSION

A federal district court may exercise personal jurisdiction over a nonresident defendant only if a court of the state in which the district court sits would have such juris-

---

**1.** Viewing the sales office issue in Gallert's favor, the Court finds that for purposes of the present

motion, Thatcher Plastic had a sales office in Gallert's home.

diction. *NUCOR v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580 (7th Cir.1994); *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1243 (7th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991); Fed.R.Civ.P. 4(e)(1). In the case of a defendant foreign corporation that does not have its principal place of business in Indiana, an Indiana court may exercise personal jurisdiction over the defendant where both (1) Indiana's long-arm statute authorizes the exercise of such jurisdiction; and (2) exercise of such jurisdiction complies with the Due Process clause of the Fourteenth Amendment to the United States Constitution. *NUCOR,* 28 F.3d at 580; *Wilson,* 916 F.2d at 1243. Indiana's long-arm statute, Trial Rule 4.4(A), is deemed to extend the State's personal jurisdiction to the constitutional limit. *Wilson,* 916 F.2d at 1243; *Brokemond v. Marshall Field & Co.,* 612 N.E.2d 143, 145 (Ind.Ct.App.1993). Thus, the inquiry regarding personal jurisdiction focuses on the scope of the Due Process clause under the circumstances.

■ The Due Process clause has been interpreted to protect a nonresident defendant from binding judgments of a forum unless the defendant has established certain "minimum contacts" with the forum. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Due Process requires such minimum contacts so that maintaining the suit does not offend "traditional notions of fair play and substantial justice." *Wilson,* 916 F.2d at 1243 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154). These minimum contacts must be established by a defendant's purposeful acts. *Id.* As the Supreme Court explained in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958):

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Moreover, the nonresident's contacts with the forum must be substantial enough for the defendant to anticipate being brought into court in the forum state. *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ Once the court has determined that minimum contacts would allow it to exercise some jurisdiction over the nonresident defendant, it must further refine the extent of that personal jurisdiction. There are two types of personal jurisdiction that can be established by a defendant's minimum contacts: specific and general. *Wilson* at 1244. Specific jurisdiction is present if the defendant has contacts from which the cause of action arises, and which constitute at least the minimum level of contact with the forum that allows the exercise of jurisdiction to be reasonable. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction, on the other hand, is present if the defendant's overall activity in the state is sufficiently "continuous and systematic" that the court's exercise of jurisdiction over the defendant is reasonable and just, even though the plaintiff's cause of action does not arise from and is not related to the defendant's contacts with the forum. *Helicopteros Nacionales,* 466 U.S. at 414–15 & n. 9, 104 S.Ct. 1868. In practice, the standard for establishing general jurisdiction is fairly high. *Wilson,* 916 F.2d at 1245.

### A. Specific Jurisdiction

■ A forum's exercise of specific jurisdiction over a nonresident defendant who has not consented to suit in that forum, is proper when the defendant has deliberately directed its activities toward forum residents, and the litigation results from alleged injuries that "arise out of or relate to" such activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475–76, 105 S.Ct. 2174; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). When the defendant has engaged in "some act by which [it] purposefully avails itself of the privilege of conducting business activities within the forum State, thus invoking the benefits and protections of its law," *Hanson v. Denckla,*

357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), then it is on notice that it would likewise be required to submit to "the burdens of litigation" in the forum as well. *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174.

In the Seventh Circuit, a defendant who has "purposefully availed itself of the privilege of conducting business in Indiana," should anticipate being hailed into court here. *NUCOR v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580 (7th Cir.1994). The "purposeful availment" requirement prevents nonresident defendants from being hailed into court solely as a result of "random," "fortuitous," or "attenuated" contacts with this state. *Logan Productions,* 103 F.3d at 52 (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174). Unilateral actions by the plaintiff will not by themselves be sufficient to assert personal jurisdiction over a nonresident defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Recently, the Seventh Circuit suggested that

> One way of thinking about the concept of "doing business" ... is that it picks out those nonresident businesses that are so like resident businesses, insofar as the benefits they derive from state services are concerned, that it would give them an undeserved competitive advantage if they could escape having to defend their actions in the local courts.

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 540 (7th Cir.1998).

For specific jurisdiction to exist in an employment discrimination case, the former employee must demonstrate that the employer has had certain minimum contacts with Indiana related to the employment. *See Charlesworth v. Marco Manuf. Co.,* 878 F.Supp. 1196, 1200 (N.D.Ind.1995). Gallert's only allegations in support of finding such contacts are that Gallert himself "worked and resided in Indiana for over 10 years and has sold tubes in Indiana." Response at 2. Thatcher Plastic's agent, Perez, confirmed Gallert's presence in Indiana, and also admitted that Thatcher Plastic had provided Gallert with a facsimile machine and telephone line in his Indiana residence for use in connection with his employment with the company. Those activities are akin to establishing an office, but they do not suffice to establish minimum employment-related contacts between Thatcher Plastic (or Courtaulds) and Indiana to allow for specific jurisdiction over a controversy in relation to Gallert's termination.

It is undisputed that Gallert was the Thatcher Plastic division's only employee in Indiana, and that Thatcher Plastic's sales in Indiana were not very significant. Likewise, Gallert's communications with Courtaulds' Illinois Thatcher Plastic plant from his Indiana residence are insufficient to establish jurisdiction. The law clearly states that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Nu–Way Systems v. Belmont Marketing,* 635 F.2d 617, 620 (7th Cir.1980). Thus, Gallert may not rely on his own contacts with his employer and the state of Indiana in his attempt to establish that this Court has specific jurisdiction over Courtaulds's Thatcher Plastic division.

The fact that Gallert chose to live in Indiana rather than closer to the main office or his clients was apparently a personal decision. In addition, Courtaulds asserts, and Gallert does not deny, that "both decisions to hire and terminate [Gallert] were made in Illinois." Def's Reply at 2. Although the Court will interpret disputed facts in favor of the plaintiff, the plaintiff must make some showing that the jurisdictional fact is in dispute to obtain favorable inferences. Therefore, as the present controversy does not arise out of Courtaulds's Thatcher Plastic division having deliberately directed its employment activities toward Indiana residents such that it should have anticipated being brought into an Indiana court by this employee, this Court finds no basis on which to exercise specific jurisdiction over Courtaulds.

### B. General Jurisdiction

The Court must next determine whether the exercise of general jurisdiction over Courtaulds would be proper. When a cause of action does not arise out of or relate to a defendant's activities in a forum, a court may still exercise general jurisdiction over

the defendant if the defendant has "continuous and systematic" contacts with the forum. *Helicopteros,* 466 U.S. at 415, 104 S.Ct. 1868. These contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." *International Shoe,* 326 U.S. at 318, 66 S.Ct. 154. Contacts related to the dispute, though alone insufficient for specific jurisdiction, may be considered along with other contacts in determining general jurisdiction. *See Keeton v. Hustler,* 465 U.S. at 774, 104 S.Ct. 1473 (finding personal jurisdiction by considering both the controversy-related magazine sales in the jurisdiction with general magazine sales in the jurisdiction unrelated to the controversy); *Charlesworth v. Marco Mfg. Co.,* 878 F.Supp. 1196, 1201 (N.D.Ind.1995).

In effect, Due Process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174. By this requirement, "the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* In *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174, the Supreme Court listed some of the factors to be considered when determining whether the exercise of personal jurisdiction comports with "fair play and substantial justice:" (1) the burden on the defendant, (2) the forum states' interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering substantive social policies.

Gallert has presented evidence of continuous and systematic contacts between two other Courtaulds divisions and Indiana. He ar-

gues that these contacts are sufficient to establish the Court's general jurisdiction over Courtaulds, even though the contacts through Thatcher Plastic were limited. The defendant argues, however, that the Court should not consider the activities of any other divisions and that the only relevant inquiry is what Thatcher Plastic has done. According to Courtaulds, Thatcher Plastic has no manufacturing plant, office, or other employees in Indiana, and its sales in the Indiana market comprise only .0055% of its annual sales nationwide. The Court cannot agree with Courtaulds's characterization of the evidence.

■ Gallert's employer is Courtaulds's Thatcher Plastic division, which is not a separately incorporated entity. Courtaulds has admitted certain jurisdictional facts that demonstrate the relationship between it and its divisions. Specifically, the divisions are not incorporated separately, nor do they file their own tax returns, nor would they be solely liable for any adverse judgment against them. The fact that Gallert was hired and fired by a vice president of one of Courtaulds's divisions does not protect the "parent" company from the legal consequences of the acts of its agents.[2] Even a parent corporation with a separate legal identity could be found to be the "employer" of personnel of a subsidiary under certain circumstances. *See Esmark v. National Labor Rel. Bd.,* 887 F.2d 739, 757 (7th Cir.1989) (where parent disregards separate legal personality of its subsidiary, liability may be imposed); *see also IDS Life Ins. Co. v. SunAmerica Life Ins. Co.,* 136 F.3d 537, 540 (7th Cir.1998) (noting that a parent is liable for its separately-incorporated subsidiary if the corporate veil may be pierced). Here, Thatcher Plastic is not even a separate legal entity, but merely a division. Pl's Ex. 4 at 3. There is no "corporate veil" to be pierced between Thatcher Plastic and Courtaulds, and by consolidating its financial statements, Courtaulds demonstrates the economic reality of their relationship. Thus, the activities in

---

2. Courtaulds continually refers to itself as the parent company of Thatcher Plastic and the other divisions. However, as that term is usually understood, Courtaulds is not a parent, it is *the* corporation, and the divisions are carrying on its business. *See* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069, pp. 363–70 (2d ed.1987). Had Courtaulds wished to protect itself from liability for the acts of its divisions, it could have chosen a different corporate form. *See, e.g. IDS Life Ins.,* 136 F.3d at 540.

Indiana by Courtaulds and its four divisions constitute the relevant activities by which to judge minimum contacts.

Courtaulds then argues that even if the sales of Thatcher Laminate and Knight are to be considered, their contacts with Indiana are still not "continuous and systematic." Reply at 2. The evidence shows otherwise. With more than eighty-five million dollars worth of products entering Indiana during the last four years, Courtaulds has demonstrated its intent to do business in this state. Gallert has successfully established a prima facie case for general jurisdiction by pointing to the activities of Courtaulds' divisions, and the Court finds sufficient continuous and systematic contacts to establish its general jurisdiction over Courtaulds. The defendant has failed to produce any evidence to the contrary.

Furthermore, the exercise of personal jurisdiction should not come as a big surprise to Courtaulds or be a substantial burden for it. In addition to the sales activities of its other divisions, Courtaulds, through its Thatcher Plastic division, knowingly employed an Indiana resident, and evidently communicated with him on a regular basis by directing telephone calls and faxes into the forum. Also, Courtaulds divisions, in Illinois, Kentucky and Ohio, border Indiana on three sides, making it difficult for Courtaulds to argue that it would sustain a significant burden in defending a claim in Indianapolis. Accordingly, this Court finds that it may properly assert general jurisdiction over defendant Courtaulds.

### III. MOTION TO TRANSFER VENUE

■ The defendant alternatively has moved to dismiss for improper venue under Rule 12(b)(3), or for transfer pursuant to 28 U.S.C. § 1406(a), which is the provision that allows transfers when venue is improper in the district in which the case was filed. In a diversity action, such as this, venue lies in a "judicial district where any defendant resides," or "where a substantial part of the events or omissions giving rise to the claim occurred," or where "the defendants are subject to personal jurisdiction at the time the action commenced, if there is no other district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). A defendant corporation resides, for venue purposes, wherever it is subject to personal jurisdiction at the time the action commenced. 28 U.S.C. § 1391(c). This Court has already determined that it has general jurisdiction over the defendant, which finding renders venue in this district proper, unless some other circumstance would make it improper.

■ Courtaulds' only argument on the issue of venue, however, is that the Court has no personal jurisdiction over Courtaulds in this case, making venue here improper. In its motion, the defendant also suggested that a transfer may be proper "in the interests of justice," which the Court interprets as a motion to change the venue pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This section gives the district court discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). When exercising its discretion, the court considers the three factors specified in § 1404(a)—the convenience of the parties, the convenience of the witnesses, and the interest of justice—in light of all the circumstances of the case. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 & n. 3 (7th Cir.1986). The relative weight to be accorded each factor is not specified in § 1404(a), rather, "[t]he weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* The movant bears the burden of persuading the court that the cause should be transferred. *Boone v. Sulphur Creek Resort, Inc.*, 749 F.Supp. 195, 201 (S.D.Ind.1990). The movant must establish that the transferee forum is "clearly more convenient." *Coffey*, 796 F.2d at 219–20.

Although the Northern District of Illinois, Eastern Division, may be more convenient for the defendant, it would not be more convenient for the plaintiff, as demonstrated by the fact that he chose to litigate in this forum. Similarly, although the Southern District of Indiana may be more convenient for the plaintiff, it is not more convenient for the defendant. Consequently, assessment of this factor does not advise the outcome. Although it is too early in this case to determine the convenience of witnesses, given that Gallert is suing his former employer for alleged age discrimination, the witnesses most likely are employees of and reside near Courtaulds' headquarters in Illinois. If so, then this factor might argue in favor of a transfer.

Nevertheless, the Court is convinced that it is not in the interests of justice to transfer this case to the Northern District of Illinois, and force Gallert to litigate his claims in a distant forum. Gallert has brought this suit against his former employer, a division of a subsidiary of a multinational corporation that does millions of dollars worth of business in Indiana each year. He is suing because he lost his job. Justice is not served by forcing Gallert to litigate claims arising from termination of his employment with the defendant in a forum far away from his home and his counsel's office. *See Bates v. J.C. Penney Co., Inc.,* 624 F.Supp. 226, 228 (W.D.N.C. 1985) (defendant corporation doing business in many states is in much better position to litigate in a distant forum than an individual plaintiff); *Garrett v. Ruth,* 456 F.Supp. 376, 385 (S.D.Ohio 1978) (same). This Court finds that venue is proper in this forum and that transfer to the Northern District of Illinois would not serve the interests of justice.

### IV. CONCLUSION

The Court has found that it has general personal jurisdiction over defendant Courtaulds, and for all of the foregoing reasons, Courtaulds' motion to dismiss is **DENIED**. Further, Courtaulds' motion to transfer this case to the United States District Court for the Northern District of Illinois is likewise **DENIED**.