[Cite as *Herold v. Venetis*, 2023-Ohio-3829.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| FLINT HEROLD, | : | |
| Appellant, | : | CASE NO. CA2022-05-049 |
| | : | O P I N I O N |
| - vs - | | 10/23/2023 |
| | : | |
| DEMETRIOS VENETIS, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2021 09 1306

Lindhorst & Dreidame Co., LPA, and Matthew C. Curran and Elizabeth M. Johnson, for appellant.

Kohl & Cook Law Firm, LLC, and Timothy J. Cook, Brian Brown, and Sean M. Kohl, for appellees.

**BYRNE, J.**

{¶ 1} Appellant, Flint Herold, appeals the order of the Butler County Court of Common Pleas granting the motion to dismiss filed by appellees, Demetrios Venetis, Jeffrey Struck, and Triseptagon, LLC, f.k.a. Alpha Builders, d.b.a. Sterling Architectural Millwork ("TRISEP"). For the reasons discussed below, we affirm the trial court's decision.

## I. Factual and Procedural Background

{¶ 2} This case involves claims by Herold that he was deprived of management fees by TRISEP, a limited liability company in which he, Venetis, and Struck were investors. Herold also claims that Venetis and Struck deprived him of the right to participate in other business opportunities. Herold filed his complaint concerning this dispute in the Butler County Common Pleas Court in September 2021.

### A. The Complaint

{¶ 3} In the complaint, Herold stated that he was a Butler County, Ohio resident, Venetis was a Massachusetts resident, Struck was a Florida resident, and TRISEP was a Florida company with its principal place of business in Massachusetts. Herold alleged that Butler County, Ohio was a proper venue pursuant to Civ.R. 3(B)(3) and (5), because "the business transaction and activity giving rise to the claims for relief occurred in Butler County, Ohio, and the damages occurred in Butler County."

{¶ 4} Herold's complaint alleged the following facts. In 2016, he, Venetis, and Struck began working together to identify businesses for investment. In November 2017, he and Venetis identified Alpha Builders, d.b.a. Sterling Architectural Millwork ("Sterling") as a target business.

{¶ 5} After deciding to acquire Sterling, Herold and Venetis "brought on" Struck as an additional investor. In October 2018, the trio sent a letter of intent ("Letter of Intent") to purchase Sterling to the owner of Sterling.

{¶ 6} The parties finalized the acquisition of Sterling in March 2019 and entered into a stock purchase agreement ("Stock Purchase Agreement"). Herold alleged that pursuant to the Stock Purchase Agreement, Struck and Venetis each acquired a 27.085% share of

TRISEP (the holding company that would own Sterling), and Herold acquired a 25% share.[1]
Other investors owned options on the remaining shares.

{¶ 7} Afterwards, TRISEP agreed to a "management services agreement" with
Herold in which it would pay Herold a monthly fee for "services" provided to TRISEP.[2]
TRISEP paid Herold management service fees from November 2019 until June 2020. Then
TRISEP stopped making fee payments, despite Herold's continued services.

{¶ 8} Herold also alleged that Struck had used a loan from TRISEP to acquire
"Craftwork," a new business that Herold, Venetis, and Struck had all been "looking at
working on together" but that Venetis and Struck had not included Herold in this business
deal. Herold claimed that he was "impermissibly excluded" from this deal because "one of
the benefits of ownership in [TRISEP] was that [TRISEP] would be used to acquire other
companies * * *."

{¶ 9} In count one, breach of contract, Herold asserted that he had an agreement
with Venetis and Struck "to be given opportunities to be involved in future business and
investment deals" and that the Defendants had violated this agreement by "among other
things, failing to acknowledge, recognize, and/or compensate [Herold] for his interest in
[TRISEP] and failing to include [Herold] in future business deals."

{¶ 10} In count two, breach of contract, the complaint asserted that TRISEP had
breached the management services agreement by failing to pay Herold for various services
he provided to the company. These services included "marketing and logo design,

---

1. Herold states in the complaint that he owned twenty-five percent of TRISEP "per" the Stock Purchase Agreement. However, that document lists him as a "(25%) Option Holder." In their answer to the complaint, the Defendants state that Herold's involvement with the Defendants was limited to a "stock purchase that never closed" and that Venetis and Struck purchased Sterling in a separate transaction "that could not have closed if [Herold] was involved." Regardless, this issue has no bearing on the outcome of this case and we merely note it here.

2. Herold did not describe the "services" he would be providing under this agreement. He also did not attach a written copy of the management services agreement or clarify whether the agreement was in writing.

developing a sales procedure, assisting with trade shows, budgeting and financial decisions, developing a web page and Facebook page, personnel decisions, and investor presentations and communications * * *."

{¶ 11} In count three, breach of fiduciary duty, the complaint asserted that Venetis and Struck breached a fiduciary duty owed to Herold based on their "cutting [Herold] out of the business" and "leveraging [TRISEP] resources for their personal benefit."

{¶ 12} In count four, unjust enrichment, Herold alleged that Venetis and Struck were unjustly enriched based on Herold providing "hundreds of hours of services" to TRISEP "without compensating [Herold.]"

{¶ 13} In count five, fraudulent inducement, Herold claimed that Venetis and Struck had falsely represented that they would "include him in the benefits of [TRISEP] and other business opportunities" and that these representation were "made multiple times in 2016, 2017, and 2018 in person and over the phone to [Herold]."

{¶ 14} In count six, Herold asked for a declaratory judgment that he has "an equitable interest in and is a part owner of both [TRISEP] and Craftwork."

{¶ 15} Herold attached to the complaint the Letter of Intent to purchase Sterling as well as the Stock Purchase Agreement for TRISEP.

## B. The Defendants' Motion to Dismiss and Affidavits

{¶ 16} Venetis, Struck, and TRISEP (collectively, "the Defendants") then filed a motion to dismiss pursuant to Civ.R. 12(B)(2) and (3), arguing that the Butler County Court of Common Pleas lacked personal jurisdiction over them because they were not residents of Ohio, and had no connection to Ohio, and because the complaint did not specify what alleged transactions occurred in Ohio. The Defendants further argued that venue was not proper in Butler County due to a forum-selection clause in the Letter of Intent specifying Massachusetts as the forum state and a Florida choice of law provision in the Stock

Purchase Agreement.

**C. Struck and Venetis Affidavits**

{¶ 17} Regarding the issue of personal jurisdiction, Venetis and Struck each filed their own affidavit in support of the motion to dismiss. In Struck's affidavit, he stated that he was a Florida resident. He met Venetis at a business conference in 2017 in Las Vegas. He and Venetis decided to form TRISEP, which would be a holding company for small business investments. They decided that TRISEP would be located in Florida.

{¶ 18} Struck stated that neither he nor Venetis had ever lived in Ohio, nor did they own any property in Ohio. TRISEP also did not own any property in Ohio. TRISEP had never "held itself out" as having any connection with Ohio. The company did not advertise for business in Ohio, had never had an office in Ohio, and had never performed any projects in Ohio. Struck averred that none of the Defendants had "any personal or professional connections with the state of Ohio."

{¶ 19} Struck further averred that neither he, Venetis, nor TRISEP conducted any negotiations or discussions with Herold while they were physically within the state of Ohio relating to the acquisition of Sterling. Struck stated that none of the documents that Herold attached to the complaint (the Letter of Intent and Stock Purchase Agreement) were "executed or negotiated in the State of Ohio." Finally, Struck averred that it would be a "tremendous hardship" upon him if he had to defend this case in Ohio.

{¶ 20} Venetis' affidavit largely mirrored Struck's affidavit. Venetis stated that he had lived in Massachusetts since 2004. Like Struck, Venetis averred that none of the Defendants had any connection with or conducted any business in Ohio. Venetis also averred that to the best of his knowledge, TRISEP had never sold anything in Ohio since they had acquired Sterling and that they were unaware of any "deals" by Sterling in Ohio prior to the acquisition.

**D. Herold's Memorandum in Opposition and Affidavit**

{¶ 21} Herold filed a memorandum opposing the Defendants' motion to dismiss, to which he attached his affidavit. In the affidavit, Herold described some facts that occurred before and after the Sterling/TRISEP deal that were connected to the state of Ohio.

{¶ 22} Herold averred that Venetis "on at least one occasion" traveled to Ohio to discuss Sterling before the acquisition. And Herold averred that "from my home in Butler County, [I] regularly participated in presentations to update the other investors. I also from my home, participated in weekly management team meetings."

{¶ 23} In the affidavit, Herold also describes other work and services he performed for TRISEP. However, he never specifies where he performed this work. For example, Herold describes a multiple-day meeting with Venetis and Struck to "develop the strategy" for TRISEP. However, he does not specify whether this meeting occurred in person or where it occurred.

{¶ 24} In his memorandum opposing the Defendants' motion to dismiss, Herold stated that the Defendants' actions fell within Ohio's long-arm statute based on the Defendants allegedly having transacted business in Ohio. Herold argued the Defendants had "obviously" transacted business in Ohio because "they have made payments to Herold in Ohio, have had meetings with Herold while he was in Ohio, accepted services from Herold while he [was] here in Ohio and had extensive communications with [Herold] in Ohio. [Venetis] even traveled to Ohio to meet with Herold." Herold went on to argue that requiring the Defendants to appear in an Ohio venue did not violate their due process rights because they had purposefully availed themselves of Ohio by creating "continuing obligations" between themselves and Herold, an Ohio resident.

**E. The Trial Court Decision**

{¶ 25} The trial court granted the Defendants' motion to dismiss. With respect to

personal jurisdiction, the court found that Herold had offered no evidence that the Defendants had any contact with Ohio other than their dealings with Herold. The court found that it did not have jurisdiction under Ohio's long-arm statute because the evidence was a "one-time contact with a resident of this state" and a "one-time transaction for the purchase of a business outside the State of Ohio." Going on, the court found that even if there had been sufficient contacts for purposes of Ohio's long-arm statute, an exercise of jurisdiction would violate the Defendants' due process rights. The court found that the Defendants' alleged contacts with Ohio were minimal and did not confer either general or specific jurisdiction on the trial court.

{¶ 26} Regarding the issue of venue, the court found that the Letter of Intent had a forum-selection clause designating Massachusetts as the "chosen court." The court found this provision was valid and enforceable.

## II. Law and Analysis

{¶ 27} Herold appealed, raising one assignment of error:

> THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS' MOTION TO DISMISS. [3]

{¶ 28} In his sole assignment of error, Herold argues that the trial court erred by granting the Defendants' motion to dismiss. Herold argues that the Butler County Court of Common Pleas has personal jurisdiction over the Defendants and that the Massachusetts forum-selection clause found in the Letter of Intent was overridden by a subsequent agreement and therefore not enforceable.

{¶ 29} We review the trial court's ruling granting a motion to dismiss for lack of

---

3. Following the filing of the appeal, the Defendants moved this court to order sanctions against Herold for frivolous conduct. Specifically, the Defendants argued that despite having filed this appeal challenging the basis for the trial court's decision, Herold has since filed a near identical complaint in a Massachusetts court. We briefly address the Defendants' request for sanctions in the conclusion, below.

personal jurisdiction pursuant to a de novo standard of review. *Salehpour v. Just A Buck Licensing, Inc.*, 12th Dist. Warren No. CA2013-03-028, 2013-Ohio-4436, ¶ 9. De novo review means that this court uses the same standard the trial court should have used. *Nwankwo v. Uzodinma*, 12th Dist. Butler No. CA2021-08-098, 2022-Ohio-565, ¶ 39.

### A. Forum-selection clause

{¶ 30} We first address whether there is a valid forum-selection clause at issue. We have previously held that parties to a contract may agree to submit to the jurisdiction of a particular court with a forum-selection clause, thereby waiving the requirement that the court have personal jurisdiction over the parties. *Natl. City Commercial Capital Corp. v. All About Limousines Corp.*, 12th Dist. Butler Nos. CA2005-08-226, et al., 2009-Ohio-1159, ¶ 7. Likewise, "[t]he Ohio Supreme Court has recognized that the requirement of personal jurisdiction under Ohio law is a waivable right and parties may consent to jurisdiction through a forum selection clause." *Total Quality Logistics, L.L.C. v. Deltex Food Prods., Inc.*, 12th Dist. Clermont No. CA2021-10-059, 2022-Ohio-1274, ¶ 16, *citing Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 66 Ohio St.3d 173, 175 (1993), and *Preferred Capital, Inc. v. Power Engineering Group, Inc.*, 112 Ohio St.3d 429, 2007-Ohio-257, ¶ 6.

{¶ 31} In their motion to dismiss Herold's complaint, the Defendants pointed to a forum-selection clause in the Letter of Intent to purchase Sterling, which reads:

> This letter shall be deemed to be made in and in all respects shall be interpreted, construed and governed by and in accordance with the laws of the State of Massachusetts without regard to the conflicts of law provisions.
>
> * * *
>
> Each party agrees that it shall bring any legal action or proceeding to enforce or interpret the terms and conditions of this Letter or to collect any monies under it, exclusively in Massachusetts (the "Chosen Court"). Each party (i) irrevocably

> consents to the exclusive jurisdiction of the Chosen Courts [sic],
> * * * (iii) waives to the fullest extent possible, any objection that
> the Chosen Courts are an inconvenient forum or do not have
> jurisdiction over any Party hereto * * *.

However, a clause in the Stock Purchase Agreement reads: "This agreement shall be governed by and construed under the laws of the State of Florida as applied to agreements among Florida residents entered into and to be performed entirely within Florida." The Stock Purchase Agreement was finalized after the Letter of Intent. Thus, while the Letter of Intent contained a Massachusetts forum-selection clause and a Massachusetts choice of law provision, the later-signed Stock Purchase Agreement omitted any forum-selection clause and only included a choice of law provision, but that provision selected Florida law, not Massachusetts law.

{¶ 32} The Defendants argue that the Stock Purchase Agreement "incorporated the Letter of Intent by reference." Specifically, they point to language in the Stock Purchase Agreement that "The purchase and sale of the Shares is being made pursuant to the terms and conditions included in the Company's Letter of Intent for the Proposed Stock Acquisition of [Sterling] dated October 13, 2018." However, mere reference to a document is insufficient to incorporate it; rather, the contract language must clearly demonstrate that the parties intended to incorporate all or part of the referenced document. *Capital Real Estate Partners, L.L.C. v. Nelson*, 12th Dist. Warren Nos. CA2018-08-085 and CA2018-08-094, 2019-Ohio-2381, ¶ 15. Pursuant to the Stock Purchase Agreement itself, "This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof * * *." The omission of any forum-selection clause from the Stock Purchase Agreement and the change of choice of law from Massachusetts to Florida both make clear that the Letter of Intent was not wholesale (that is, in its entirety) incorporated into the Stock Purchase Agreement.

{¶ 33} Even if we were to find that the forum-selection clause contained in the Letter of Intent was incorporated by reference into the Stock Purchase Agreement, two further issues would preclude the triggering of the forum-selection clause in this case. First, TRISEP was not a party to the Letter of Intent, so the Massachusetts forum-selection clause could not be applied against it. Second, and more importantly, the Massachusetts forum-selection clause relates only to "any legal action or proceeding *to enforce or interpret the terms and conditions of this Letter* [of Intent]." (Emphasis added.) Critically, Herold's claims in this case do not arise from or relate to the "enforce[ment] or interpret[ation of] the terms and conditions of * * * [the] Letter [of Intent]." Herold's claims in this case instead relate to his work on behalf of TRISEP, particularly with regard to the alleged management services agreement. As such, the forum-selection clause in the Letter of Intent, even if found to be "valid and enforceable," as it was by the trial court, would not apply to this case. The trial court therefore erred in holding that the claims in this case "must be resolved in Massachusetts" based upon the forum-selection clause.

## B. Personal Jurisdiction

{¶ 34} Having established that there is no valid forum-selection clause applicable to the claims in this case, we next review the trial court's judgment granting the Defendants' motion to dismiss for lack of personal jurisdiction.

{¶ 35} Where a trial court decides a Civ.R. 12(B)(2) motion without a hearing, a plaintiff need only make a prima facie showing of personal jurisdiction and the trial court must view allegations in the pleadings and documentary evidence in a light most favorable to the plaintiff, resolving all reasonable competing inferences in its favor. *Booth v. Watershed Wellness Ctr.*, 12th Dist. Butler No. CA2013-04-065, 2013-Ohio-5272, ¶ 7. A prima facie showing is made where the plaintiff produces sufficient evidence to allow reasonable minds to conclude that the trial court has personal jurisdiction over the

defendant. *Id.*

**{¶ 36}** Before a trial court may exert personal jurisdiction over a nonresident defendant, it must complete a two-step analysis. *Id.* at ¶ 8, citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73 (1990). First, the defendant must satisfy the provisions of Ohio's long-arm statute, R.C. 2307.382, and second, exercising jurisdiction over the defendant must comply with due process requirements inherent in the Fourteenth Amendment. *Id.*, citing *Dobos v. Dobos*, 179 Ohio App.3d 173, 2008-Ohio-5665 (12th Dist.).[4]

### 1. Ohio's Long-Arm Statute

**{¶ 37}** We begin with the question of whether the Defendants' conduct falls within Ohio's long-arm statute. *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, ¶ 13. Ohio's long-arm statute, R.C. 2307.382, enumerates specific conduct that gives rise to personal jurisdiction. *Id.* It provides, as relevant here, that "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * * (1) Transacting any business in this state * * *." R.C. 2307.382(A)(1). In his appellate brief, Herold argues the Defendants' conduct falls under this section of the statute, and states that "All Defendants here have conducted business and had dealings in Ohio with Herold over a significant period of time."

---

4. The Defendants, pointing to a 2020 amendment to the long-arm statute, argue that a two-step analysis of personal jurisdiction is no longer necessary because Ohio's long-arm statute is now coextensive with federal due process requirements. The current version of R.C. 2307.382 states that: "In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." R.C. 2307.382(C). The Defendants cite no controlling legal authority for their argument that the two-step analysis is no longer necessary. And at least one Ohio federal district court has found that the amendment did "not * * * collapse the long-arm statute's specific jurisdiction test into the Federal [Due Process] standard. *Premier Property Sales Ltd. v. Gospel Ministries Internatl., Inc.*, 539 F.Supp.3d 822, 828 (S.D.Ohio 2021), fn. 2. And we note that the Ohio Supreme Court has recently (as in, after the amendment to R.C. 2307.382) referred to personal jurisdiction as encompassing both a finding of specific statutory authority under the long-arm statute and compliance with due process. *See LG Chem, Ltd. v. Goulding*, 167 Ohio St.3d 488, 2022-Ohio-2065, ¶ 10. Ultimately, whether we should engage in a two-step analysis or not is not an outcome-determinative issue in this case. As such, we decline to reconsider our precedent in the context of this case.

**{¶ 38}** To "transact" business means to prosecute negotiations, carry on business, or have dealings. *Kentucky Oaks* at 75. The term "transact,"

> embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *.

*Id.*, quoting *Black's Law Dictionary* 1341 (5th Ed.1979). Cases involving whether a nonresident defendant "transacted business" in Ohio are highly fact specific, and "[w]ith no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (1994).

**{¶ 39}** Herold argues that the Defendants conducted business and "had dealings" with him "over a significant period of time." He claims that "they" (presumably Venetis and Struck) had "multiple meetings" with him while he was in Ohio and that the Defendants accepted services from him while he was "here in Ohio." He also asserts that the Defendants had "extensive and numerous communications" with him while he was in Ohio.

**{¶ 40}** Even after reviewing the allegations of the complaint and the factual averments in Herold's affidavit in a light most favorable to Herold, we cannot find support in the record for Herold's claims that all his actions in conjunction with the Defendants occurred while he was physically in Ohio. In his appellate brief, he states that he had meetings, took telephone calls, sent communications, and all of this took place while he was in his home office in Ohio. However, neither the complaint nor the affidavit he filed in opposition to the Defendants' motion to dismiss support this claim.

**{¶ 41}** Even though he filed it in conjunction with his opposition to the Defendants' personal jurisdiction arguments, Herold's affidavit provides little information specifically

connecting any of his activity or the Defendants' activities to Ohio. He does not specify where he is performing most tasks or activities in conjunction with TRISEP. In fact, he only refers to Ohio in three instances in the affidavit: (1) that he is a resident of Ohio, (2) that Venetis travelled "at least once" to Ohio to "discuss" TRISEP, and (3) that he, from his home, in Butler County "regularly participated in presentations to update the other investors" and participated in "weekly management team meetings."

{¶ 42} The single visit by Venetis to Ohio to "discuss" the acquisition of Sterling arguably falls within the ambit of R.C. 2307.382(A)(1), given the broad wording of the statute. However, none of the allegations in the complaint or affidavit present any evidence in support of the conclusion that Struck or TRISEP transacted business in Ohio. The fact that Herold happened to be in Ohio when he was participating in the "weekly management team meetings" of a Florida company physically located in Massachusetts does not mean that TRISEP or Struck were transacting business in Ohio. In fact, we do not even know if Struck participated in those meetings because Herold's affidavit does not state who participated in those meetings.

{¶ 43} In sum, Herold has not demonstrated through the allegations in the complaint or through the factual averments in his affidavit that TRISEP or Struck's activities fall within Ohio's long-arm statute. Venetis' single visit to Ohio might implicate the long-arm statute. However, for the reasons discussed below, we find that due process of law would not permit the exercise of personal jurisdiction over Venetis, or any of the Defendants for that matter.

### 2. Due Process

{¶ 44} We next consider whether granting jurisdiction to an Ohio court comports with due process requirements under the United States Constitution. "It has long been established that the Fourteenth Amendment limits the personal jurisdiction of state courts." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 582 U.S. 255,

261, 137 S.Ct. 1773 (2017). The due process clause of the Fourteenth Amendment requires that a nonresident defendant have sufficient minimum contacts with the forum state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Aviation Publishing Corp. v. Morgan*, 12th Dist. Warren No. CA2017-12-169, 2018-Ohio-3224, ¶ 20. Stated otherwise, the due process clause protects a nonresident defendant's liberty interest in not being subject to a court's judgment if the defendant has established no meaningful contacts, ties, or relations with that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-472, 105 S.Ct. 2174 (1985), citing *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154 (1945).

{¶ 45} Under the due process clause, a court obtains either specific or general jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984), fns. 8 and 9. Specific jurisdiction exists when a plaintiff's controversy is related to or arises out of the defendant's contact with the forum state. *LG Chem, Ltd.*, 2022-Ohio-2065 at ¶ 13. General jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit not arising out of or not related to the defendant's contacts with the forum state. *Helicopteros* at 414, fn. 9.

{¶ 46} We first consider specific jurisdiction, which depends on the "'relationship among the defendant, the forum, and the litigation' * * *." *Helicopteros* at 414, quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569 (1977). In particular, a court examines whether the defendant "purposefully established minimum contacts within the forum State" and whether the "litigation results from alleged injuries that 'arise out of or relate to' those activities[]" creating "minimum contacts." *Burger King*, 471 U.S. at 472, 474, and 477. For purposes of specific jurisdiction, "minimum contacts" exist when the nonresident defendant's purposeful and related contacts "create a 'substantial connection' with the forum State." *Id.* at 475. Personal jurisdiction is proper under such circumstances because

the defendant "should reasonably anticipate being haled into court" in the forum state. *Id.* at 474, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980).

{¶ 47} If the court concludes that a defendant has established the requisite "minimum contacts" with the forum state under specific jurisdiction, the court next examines whether asserting personal jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Id.* at 476, quoting *Internatl. Shoe*, 326 U.S. at 320. In particular, the court evaluates: "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King* at 477, quoting *World-Wide Volkswagen* at 292.

{¶ 48} First considering the issue of minimum contacts, we do not find that Herold has demonstrated that either Struck or Venetis have a "substantial connection" to Ohio in conjunction with the claims asserted in the lawsuit. Based on the allegations in the complaint and the documentary evidence filed in the record, Struck and Venetis have essentially no connection with Ohio other than the fact that they entered into a business transaction with an individual who happens to be a resident of Ohio. TRISEP also has effectively no connection with Ohio other than the fact that it allegedly entered into a management services agreement with an Ohio resident, and an Ohio resident performed some "services" for it.

{¶ 49} The fact of Herold's Ohio state residency is the sort of "unilateral activity" by a plaintiff that is not appropriate to demonstrate that a nonresident defendant has sufficient contacts with a forum state. *Helicopteros*, 466 U.S. at 417. "'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement

of contact with the forum State' * * *." *Id.*, quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958).

{¶ 50} The single visit by Venetis to Ohio is not sufficient in our view to demonstrate that Venetis would reasonably anticipate being haled into court over a dispute over TRISEP. That is, a single visit to Ohio by a nonresident to discuss an out-of-state business deal does not demonstrate the kind of substantial connection to Ohio necessary to invoke jurisdiction. *Buflod v. Von Wilhendorf, L.L.C.*, 12th Dist. Warren No. CA2006-02-022, 2007-Ohio-347, ¶ 17 ("'single' or 'occasional' acts are insufficient to establish jurisdiction"), quoting *Burger King* at 476.

{¶ 51} The somewhat closer question is whether TRISEP has a "substantial connection" to Ohio because it was in a quasi-employment relationship with Herold due to the alleged management services agreement. Again, but for the fact that Herold is an Ohio resident, there does not seem to be any connection between TRISEP and the state of Ohio. As set forth in the Venetis and Struck affidavits, TRISEP conducts no business in Ohio, owns no property in Ohio, has never sold anything in Ohio, and does not advertise business in Ohio. So, the question becomes whether the fact that TRISEP entered into a management services agreement with an Ohio resident, and the Ohio resident performed various services while residing in Ohio, demonstrates a "substantial connection" between TRISEP and Ohio.

{¶ 52} In analyzing this issue, we found notable the case of *Gallert v. Courtaulds Packaging Co. Inc.*, 4 F.Supp.2d 825 (S.D.Ind. 1998). There, the United States District Court for the Southern District of Indiana found that the due process clause precluded it from exercising specific jurisdiction over a nonresident defendant.

{¶ 53} In *Gallert*, the plaintiff, an Indiana resident, filed a wrongful employment termination complaint in Indiana federal court against his former employer, Thatcher Tubes,

a division of Cortaulds Packaging Co., Inc. *Id.* at 828. Courtaulds was a West Virginia corporation and Thatcher Tubes was headquartered in Illinois. *Id.*

{¶ 54} Thatcher Tubes had employed the plaintiff as a sales representative for more than thirteen years. *Id.* For more than ten of those years, the plaintiff resided in Indiana, where he maintained a Thatcher Tubes sales office from his home. In addition, Indiana had been part of the plaintiff's sales territory for more than five years. *Id.* The plaintiff maintained a facsimile machine and telephone in his residence that he used to communicate with Thatcher, and the machine and telephone line were provided by Thatcher Tubes. *Id.* at 830.

{¶ 55} The court found that the plaintiff had not established minimum contacts based on the argument that the plaintiff worked for Thatcher Tubes while physically residing in Indiana and that he communicated with Thatcher while in Indiana. *Id.* The court found these facts were "unilateral activity" that did not satisfy the requirement of minimum contact with the forum state. The court found notable that the plaintiff was Thatcher's only employee in Indiana. The court also found notable that the decision to fire the plaintiff had been made in Illinois. *Id.*

{¶ 56} Here, like in *Gallert*, Herold is asking this court to find specific jurisdiction over a nonresident corporate entity based solely on his own unilateral activity of residing in Ohio, communicating from Ohio, and providing services from Ohio. But, as set forth above, unilateral activity alone is insufficient to establish minimum contacts. Every other fact of consequence in this case involves activity that occurred outside of Ohio, including the negotiation and drafting of all agreements attached to Herold's complaint.

{¶ 57} We also find notable in *Gallert* that the plaintiff worked for the nonresident entity for a much greater length of time than Herold provided services to TRISEP. Moreover, like in *Gallert*, we find it significant that any decisions made by TRISEP to violate the alleged management services agreement, or any decisions made by Struck or Venetis

to exclude Herold from business deals, were made outside of Ohio.

**{¶ 58}** Additionally, we note that the use of interstate facilities such as the internet, telephone, and the mail, and the receipt of payments in Ohio are the sort of "secondary or ancillary factors" that alone, cannot provide the minimum contacts necessary for due process. *See XPX Armor and Equip., Inc. v. SkyLIFE Co.*, 6th Dist. Lucas No. L-20-1123, 2021-Ohio-2559, ¶ 33. *See also Nationwide Life Ins. Co. v. Hampton Supply, Inc.*, 829 F.Supp 915, 917-918 (S.D. Ohio 1993) (holding that an Ohio corporation's payments to a nonresident corporate entity did not result in connections to Ohio so substantial that the defendant could have anticipated being subject to the jurisdiction of Ohio courts).

**{¶ 59}** Accordingly, we find that Herold has failed to establish a "substantial connection" between the Defendants and the state of Ohio. Due to this failure, we need not separately consider whether exercising jurisdiction would offend "fair play and substantial justice." *See Aviation Publishing Corp*, 2018-Ohio-3224 at ¶ 20. In sum, Herold has failed to establish that Ohio has specific jurisdiction over any of the Defendants.

**{¶ 60}** We next turn to the issue of general jurisdiction. A court may exercise general jurisdiction over a defendant who has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416. General jurisdiction requires a greater amount of contacts than specific jurisdiction. *Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 2005-Ohio-4930, ¶ 37 (10th Dist.). Under general jurisdiction, the contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." *Internatl. Shoe*, 326 U.S. at 318.

**{¶ 61}** Herold has pointed to no facts in the record that would support any finding of "continuous and systematic" contacts with the state of Ohio by any of the Defendants. Accordingly, we find that Herold did not demonstrate sufficient "minimum contacts" necessary to exercise personal jurisdiction over any of the Defendants. *Aviation Publishing*

*Corp*, 2018-Ohio-3224 at ¶ 20.

### III. Conclusion

**{¶ 62}** Having found that the trial court lacked personal jurisdiction over Venetis, Struck, and TRISEP, we overrule Herold's sole assignment of error. We find that there were reasonable grounds to file this appeal and we therefore deny the Defendants' motion for sanctions.

**{¶ 63}** Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.